IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

MARKEITH A. HUNTER,      )
                                )
        Petitioner,      )
                                )
v.                            )      Civil Action No.  3:19CV656–HEH
                                )
DIRECTOR OF THE DEPARTMENT  )
OF CORRECTIONS,      )
                                )
        Respondent.     )

## MEMORANDUM OPINION
### (Denying § 2254 Petition)

Markeith A. Hunter, a Virginia state prisoner proceeding *pro se*, brings this

petition pursuant to 28 U.S.C. § 2254 ("§ 2254 Petition," ECF No. 1), challenging his

conviction in the Circuit Court of King George County, Virginia (hereinafter, "Circuit

Court"). In his § 2254 Petition, Hunter argues entitlement to relief based upon the

following claims: [1]

Claim One: "On the date of 10–9–2016, the King George Sheriff's Office
knowingly and willfully violated my 4th Amendment right[s]. . . .
Wanda Hunter clearly states that she never contacted the . . . Sheriff's
Office, never consented to the search of her home nor the eviction of

---

[1] The Court corrects the spelling, punctuation, and capitalization in the quotations from Hunter's
submissions. The Court employs the pagination assigned by the CM/ECF docketing system.

    Accompanying Hunter's § 2254 Petition is a forty-eight-page memorandum in support
that describes attached exhibits and includes rambling argument. ("Memorandum," ECF No. 2.)
The Court tries its best to decipher the facts in support of each claim. It appears that the main
theme underlying Hunter's claims alleges that errors occurred with respect to the search of the
residence where Hunter was manufacturing methamphetamine. Any claim of this nature is
barred by Hunter's validly entered guilty plea. *See infra* Part IV. Therefore, the Court need not
expend great effort parsing each minute detail of his accompanying submissions or his response.

her tenants.  Nor did she give Sean Hunter any authorization to act on her behalf." (*Id.* at 5.)

Claim Two:  "On the date of 10–11–2016, the King George Sheriff's Det. Patterson again violated my 4th Amendment right[s].  Per the motion to suppress written by Robert May Jr. . . . [he] violated my 4th Amendment right[s] when he searched my home with an unlawful search warrant [and] . . . assisted Sean Hunter in the illegal eviction two (2) days prior at my home without the homeowner's consent." (*Id.* at 7.)

Claim Three:  (a) Robert May, Jr. rendered ineffective assistance when: (1) he failed "to file[] for a motion of discovery;" (2) failed to "interview or subpoena Wanda Hunter a key pivotal witness form my defense" (*id.* at 8); and, (3) failed to bring "any defense strategy to the jail to discuss with me to help me with my case" (ECF No. 2, at 20) and failed to have the suppression motion heard before the trial date (*id.* at 21); (b) Timothy Barbrow rendered ineffective assistance when: (1) he failed "to file[] for a motion of discovery;" and (2) failed to "interview or subpoena Wanda Hunter a key pivotal witness form my defense" (*id.* at 8).[2]

Claim Four:  The "Supreme Court of Virginia violated my 6th Amendment right, the right to have a witness testify [on] my behalf, violating my 14th Amendment to due process a fair trial" when it dismissed his petition for writ of habeas corpus. (*Id.* at 10.)

Respondent moves to dismiss on the ground that Hunter's claims are in part,

procedurally defaulted and barred from review here, and the remainder lack merit.[3]

---

[2] Hunter raised this as one claim with no subparts.  Because the claim includes allegations against two different attorneys, the Court separates Hunter's claim into Claim Three (a) and Three (b).

[3] After Respondent filed the Answer and Motion to Dismiss, Hunter filed a Motion to Amend with an Amended § 2254 Petition attached wherein he attempts to replace his fourth claim with a different claim for relief.  The Court later refers to this claim as Proposed Claim Five. (ECF No. 16; ECF No. 16–1, at 10.)  Respondent argues that the Motion to Amend should be denied because the amendment is futile.  As discussed in greater detail, in Part VII, the Motion to Amend will be denied.  Respondent acknowledges and the Court agrees that the first three claims are substantially the same, in both the original § 2254 Petition and the Amended § 2254 Petition.  The Amended § 2254 Petition, however, contains scant supporting argument compared with Hunter's initial § 2254 Petition and accompanying memorandum.  Because the Court denies the

Hunter has filed a response, entitled "Motion to opposing dismissal and Rule 5 reply." ("Response," ECF No. 29.)[4] For the reasons set forth below, the Motion to Dismiss (ECF No. 18) will be granted.

## I.   PROCEDURAL HISTORY

A grand jury charged Hunter with one count of manufacturing a controlled substance having been before convicted of such an offense or a substantially similar offense. Cir. Ct. Record 24.[5] That charge carried a sentence of no less than ten years up to life imprisonment. *See id.* Prior to the acceptance of his guilty plea, the Commonwealth agreed to amend the Indictment to remove the enhanced penalty for a second offense and changed the maximum term of imprisonment to "40 years or for any period not less than ten (10) years." Cir. Ct. Record 93; (*see* ECF No. 20–4, at 3–4). Hunter pled guilty to one count of manufacturing methamphetamine and by Order entered October 1, 2017, was sentenced by the Circuit Court to thirty years of incarceration with twenty-two years and six months suspended, the exact sentence recommended in the Plea Agreement. (ECF No. 20–1, at 1–2.) Hunter did not appeal.

---

Motion to Amend, the Court utilizes only the original § 2254 Petition and attached memorandum as the operative habeas petition.

[4] Hunter's Response to the Motion to Dismiss also is comprised of citations to exhibits, and "Motions to Supplement," and lacks any true organization and decipherable argument. Again, the Court has difficulty following Hunter in this submission.

[5] The Circuit Court paginated the paper record in *Commonwealth v. Hunter*, No. CR17–9 (Va. Cir. Ct. filed Jan. 26, 2017). For ease of reference, where the Court must cite to the paper record, the Court hereinafter employs the pagination assigned by the Circuit Court to these records with the abbreviation, "Cir. Ct. Record."

On February 7, 2018, Hunter filed a petition for writ of habeas corpus in the

Supreme Court of Virginia. (ECF No. 20–2, at 1.) Hunter failed to number his claims

and they were entirely repetitive. (*See* SCVA Record 73 n.1.)[6] In his state habeas

petition and a supplement, Hunter raised the following claims for relief as set forth by the

Supreme Court of Virginia:

Claim B:    Hunter was "denied the effective assistance of counsel when his first
            court-appointed attorney, Robert May:"
                    (1) "failed to obtain police reports . . . failed to file a motion
                    for discovery, and failed to obtain documents establishing the
                    chain of custody of the controlled substances seized by police"
                    (ECF No. 20–2, at 1);
                    (2) "failed to call an eyewitness, Ms. Lewis . . . to testify at the
                    preliminary hearing" (*id.* at 2–3);
                    (3) failed to "object when Detective Patterson testified at the
                    preliminary hearing that Hunter 'brought a bag of meth to him
                    at the sheriff's station'" (*id.* at 3.)
                    (4) "failed to cross-examine Detective Patterson at the
                    preliminary hearing regarding his testimony that he had been
                    to [Hunter's] home two days before police served the search
                    warrant" (*id.* at 4);
                    (5) "'repeatedly ignored' his requests to subpoena Wanda
                    [Hunter] to testify at the preliminary hearing" (*id.*); and,
                    (6) "did not visit him at the jail 'to discuss any defense strategy'
                    when May did not tell him the June 1, 2017 trial date had been
                    continued to June 8, 2017, when May visited him three days
                    before June 8, 2017, to give him a copy of the motion to
                    suppress, and when May failed to have the motion to suppress
                    heard in advance of the trial date." (*Id.* at 5.)

Claim C:    Hunter "was denied the effective assistance of counsel when his
            second court-appointed counsel, Timothy [Barbrow], did not accept
            or return [Hunter's] phone calls or the phone calls of his family, and
            did not respond to written requests for police reports, a motion for

---

[6] The Supreme Court of Virginia's record in *Hunter v. Dir. of the Dept. of Corr.*, No. 180222, is
so voluminous that the clerk also paginated the record. Where the Court must cite the paper
record, the Court employs the pagination assigned by the clerk to these records with the
abbreviation "SCVA Record."

|            | discovery, and the chain of custody, none of which [Barbrow] produced for [Hunter]." (*Id.*) |
| Claim D:   | Hunter "was denied the effective assistance of counsel when [Barbrow] failed to file a motion for discovery." (*Id.*) |
| Claim E:   | "[D]etective Patterson obtained a search warrant for [Hunter's] home based on hearsay evidence which did not implicate [Hunter] in the manufacturing of methamphetamine." (*Id.* at 6.) |
| Claim F:   | Hunter "was denied his right to face his accuser when [Sean] Hunter, who reported him to the police, did not testify at the preliminary hearing or submit an affidavit." (*Id.*) |

On December 7, 2018, the Supreme Court of Virginia granted the Respondent's

Motion to Dismiss and dismissed Hunter's petition. (*Id.*)

## II.   CLAIM BARRED FROM FEDERAL HABEAS REVIEW

In Claim Four, Hunter contends that, in his state habeas proceedings, the

"Supreme Court of Virginia violated my 6th Amendment right, the right to have a witness

testify [on] my behalf, violating my 14th Amendment to due process a fair trial." (ECF

No. 1, at 10.) In order to obtain federal habeas relief, at a minimum, a petitioner must

demonstrate that he is "in custody in violation of the Constitution or laws or treaties of

the United States." 28 U.S.C. § 2254(a). Thus, "claims of error occurring in a state post-

conviction proceeding cannot serve as a basis for federal habeas corpus relief." *Bryant v.

Maryland*, 848 F.2d 492, 493 (4th Cir. 1988) (citations omitted) (emphasis omitted).

This is so because the habeas petitioner's detention results from the underlying state

conviction, not the state collateral proceeding. *Lawrence v. Branker*, 517 F.3d 700, 717

(4th Cir. 2008) ("[E]ven where there is some error in state post-conviction proceedings, a

petitioner is not entitled to federal habeas relief because the assignment of error relating

to those post-conviction proceedings represents an attack on a proceeding collateral to

detention and not to the detention itself." (citing *Bryant*, 848 F.2d at 493; *Bell–Bey v. Roper*, 499 F.3d 752, 756 (8th Cir. 2007); *United States v. Dago*, 441 F.3d 1238, 1248 (10th Cir. 2006))). Hunter's allegations that the Supreme Court erred during the state post-conviction proceedings fail to provide a cognizable basis for federal habeas corpus relief, and any such challenge will be dismissed. Accordingly, Claim Four will be dismissed.

### III. EXHAUSTION AND PROCEDURAL DEFAULT

#### A. Applicable Law

Before a state prisoner can bring a § 2254 petition in federal district court, the prisoner must first have "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). State exhaustion "is rooted in considerations of federal-state comity," and in Congressional determination via federal habeas laws "that exhaustion of adequate state remedies will 'best serve the policies of federalism.'" *Slavek v. Hinkle*, 359 F. Supp. 2d 473, 479 (E.D. Va. 2005) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 491–92 & n. 10 (1973)). The purpose of exhaustion is "to give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Picard v. Connor*, 404 U.S. 270, 275 (1971) (internal quotation marks omitted). Exhaustion has two aspects. First, a petitioner must utilize all available state remedies before he can apply for federal habeas relief. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 844–48 (1999). As to whether a petitioner has used all available state remedies, the statute notes that a habeas petitioner "shall not be deemed to have exhausted the remedies

available in the courts of the State . . . if he has the right under the law of the State to

raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).

The second aspect of exhaustion requires a petitioner to have offered the state

courts an adequate opportunity to address the constitutional claims advanced on federal

habeas. "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly

present' his claim in each appropriate state court (including a state supreme court with

powers of discretionary review), thereby alerting that court to the federal nature of the

claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quoting *Duncan v. Henry*, 513 U.S.

364, 365–66 (1995)). Fair presentation demands that "both the operative facts and the

controlling legal principles" must be presented to the state court. *Longworth v. Ozmint*,

377 F.3d 437, 448 (4th Cir. 2004) (quoting *Baker v. Corcoran*, 220 F.3d 276, 289 (4th

Cir. 2000)). The burden of proving that a claim has been exhausted in accordance with a

"state's chosen procedural scheme" lies with the petitioner. *Mallory v. Smith*, 27 F.3d

991, 994–95 (4th Cir. 1994). The United States Court of Appeals for the Fourth Circuit

has summed up a petitioner's burden in this regard as follows:

> [T]he exhaustion requirement demands that the petitioner "do more than
> scatter some makeshift needles in the haystack of the state court record. The
> ground relied upon must be presented face-up and squarely; the federal
> question must be plainly defined. Oblique references which hint that a theory
> may be lurking in the woodwork will not turn the trick."

*Mallory v. Smith*, 27 F.3d 991, 995 (4th Cir. 1994) (quoting *Martens v. Shannon*, 836

F.2d 715, 717 (1st Cir. 1988)).

"A distinct but related limit on the scope of federal habeas review is the doctrine

of procedural default." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). This

doctrine provides that "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Id.* (citing *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991)). A federal habeas petitioner also procedurally defaults claims when the "petitioner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Id.* (quoting *Coleman*, 501 U.S. at 735 n. 1).[7] The burden of pleading and proving that a claim is procedurally defaulted rests with the state. *Jones v. Sussex I State Prison*, 591 F.3d 707, 716 (4th Cir. 2010) (citing cases). Absent a showing of "cause for the default and actual prejudice as a result of the alleged violation of federal law," or a showing that "failure to consider the claims will result in a fundamental miscarriage of justice," this Court cannot review the merits of a defaulted claim. *Coleman*, 501 U.S. at 750; *see Harris v. Reed*, 489 U.S. 255, 262 (1989).

In Virginia, to exhaust state remedies, a "petitioner must present the same factual and legal claims raised in the instant petition to the Supreme Court of Virginia either by way of (i) a direct appeal, (ii) a state habeas corpus petition, or (iii) an appeal from a circuit court's denial of a state habeas petition." *Sparrow v. Dir., Dep't of Corr.*, 439 F.

---

[7] Under these circumstances, even though the claim has not been fairly presented to the Supreme Court of Virginia, the exhaustion requirement is "technically met." *Hedrick v. True*, 443 F.3d 342, 364 (4th Cir. 2006) (citing *Gray v. Netherland*, 518 U.S. 152, 161–62 (1996)).

Supp. 2d 584, 587 (E.D. Va. 2006); *see also* Va. Code Ann. § 8.01-654 (A) (1) (West

2020). "Whichever route the inmate chooses to follow, it is clear that [the inmate]

ultimately must present his [federal habeas] claims to the Supreme Court of Virginia and

receive a ruling from that court before a federal district court can consider them." *Banks*

*v. Johnson*, No. 3:07CV746–HEH, 2008 WL 2566954, at *2 (E.D. Va. June 26, 2008)

(second alteration added) (quoting *Graham v. Ray*, No. 7:05CV00265, 2005 WL

1035496, at *2 (W.D. Va. May 3, 2005)); *see also Sparrow*, 439 F. Supp. 2d at 587.

### B.   Claims One, Two, and Three (b)(2) are Defaulted

Hunter failed to raise Claim One or Three (b)(2) in the Supreme Court of Virginia.

If Hunter now attempted to raise these claims in the Supreme Court of Virginia in a

habeas petition, that habeas petition would be barred as successive pursuant to section

8.01–654(B)(2) of the Virginia Code,[8] and as untimely pursuant to section 8.01–

654(A)(2) of the Virginia Code.[9]  Virginia's statute of limitations for habeas actions and

---

[8] This statute provides, in relevant part:

> Such petition shall contain all allegations the facts of which are known to petitioner
> at the time of filing and such petition shall enumerate all previous applications and
> their disposition.  No writ shall be granted on the basis of any allegation the facts
> of which petitioner had knowledge at the time of filing any previous petition.

Va. Code Ann. § 8.01–654(B)(2) (West 2020).

[9] This statute provides:

> A habeas corpus petition attacking a criminal conviction or
> sentence . . . shall be filed within two years from the date of final judgment
> in the trial court or within one year from either final disposition of the direct
> appeal in state court or the time for filing such appeal has expired,
> whichever is later.

the bar on successive habeas petitions are adequate and independent procedural rules when so applied. *See Clagett v. Angelone*, 209 F.3d 370, 379 (4th Cir. 2000); *Sparrow*, 439 F. Supp. 2d at 587–88. In his § 2254 Petition, Hunter states that he raised Claim One and Claim Three generally, in his habeas petition before the Supreme Court of Virginia. (ECF No. 1, at 6, 8.) However, a review of the record establishes that he did not fairly present and receive a ruling from the Supreme Court of Virginia on these claims. *See Banks*, 2008 WL 2566954, at *2. Hunter fails to demonstrate any cause and prejudice for his default or a fundamental miscarriage of justice in his § 2254 Petition, and thus, Claim One and Claim Three (b)(2) are defaulted.[10]

With respect to Claim Two, the Supreme Court of Virginia found it barred by *Slayton v. Parrigan*, 205 S.E.2d 680, 682 (1974) because it could have been raised, but was not raised, on direct appeal. (ECF No. 20–2, at 2.) *Slayton* is an adequate and independent state procedural rule when so applied. *See Mu'Min v. Pruett*, 125 F.3d 192, 196–97 (4th Cir. 1997). Again, Hunter fails to demonstrate any cause and prejudice for his default or a fundamental miscarriage of justice, and Claim Two is also defaulted.

To the extent that Hunter suggests that counsel is the cause for his default of Claims One and Two (*see* ECF No. 2, at 18), Hunter fails to demonstrate any prejudice,

---

Va. Code Ann. § 8.01–654(A)(2) (West 2020).

[10] Respondent acknowledges that for Claim Three (b)(2) under *Martinez v. Ryan*, 566 U.S. 1 (2012), ineffective assistance of counsel "at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id.* at 9. However, as discussed in Part VI.B., Claim Three (b)(2) lacks merit because counsel was not ineffective.

because his voluntary and intelligent guilty plea waived all non-jurisdictional defenses antecedent to his guilty plea. *See Peyton v. King*, 169 S.E.2d 569, 571 (Va. 1969); *see infra* Part IV. Moreover, as discussed in conjunction with Claim Three, Hunter's attorneys were not ineffective. *See infra* Part VI.B. Accordingly, Claims One, Two, and Three (b)(2) are barred from review here and will be dismissed.

## IV.  FACTUAL BASIS FOR PLEA AND GUILTY PLEA PROCEEDINGS

In his written Plea Agreement, Hunter agreed that he was pleading guilty because he was in fact guilty of the charge in the Amended Indictment of manufacturing methamphetamine, that he had read and discussed the Amendment Indictment with his attorney, and that the Commonwealth's evidence against him was sufficient to convict him. Cir. Ct. Record 94. Hunter agreed that his attorney had explained the nature of the charges and any possible defenses. *Id.* Amongst other things, Hunter agreed that "I understand that by pleading guilty I give up all objections to the admissibility of evidence, *all objections to the legality of my arrest, all objections to any search or seizure of property*, and all objections to other errors in bringing the charge or charges against me. *I hereby waive all such rights and any and all defects in the indictments, warrants, and/or information*." Cir. Ct. Record 94–95. Hunter also agreed that, by pleading guilty, he was giving up his right to cross-examine witnesses or call his own witnesses, to present his own evidence in his defense, or to challenge the Commonwealth's evidence against him. *Id.* at 95. The Plea Agreement also contained a recommended sentence of thirty years of incarceration, with twenty-two years and six months suspended. *Id.* at 96.

During the guilty plea hearing, Hunter agreed that he was entering in to his guilty plea freely and voluntarily and admitted that he was, in fact, guilty. (ECF No. 20–4, at 10.) Hunter agreed that he understood that by pleading guilty, he waived his right to a jury trial and his right to cross-examine witnesses. (*Id.* at 10–11.) Hunter affirmed that no one had threatened him or forced him into pleading guilty or made any promises to him not contained in the Plea Agreement. (*Id.* at 12, 13–14.) Hunter agreed that he had reviewed the Sentencing Guidelines that were attached to the Plea Agreement. (*Id.* at 13.) Hunter also agreed that he was "fully satisfied with the services of [his] attorney, Mr. Barbrow." (*Id.* at 14.)[11] The Government then recited the evidence against Hunter:

> Your honor, had this matter proceeded to trial today, the Commonwealth's evidence would have been that on or about October 11th, 2016, Detective Joe Patterson of the King George Sheriff's Office, who is also a member of the Tri-County Narcotics Task Force, answered a drug complaint from Shawn Hunter, the brother of Markeith Hunter, the defendant.
> That complaint was made in the lobby of the Sheriff's Office here in King George County. The complaint had stated that his brother was cooking meth at their mother's home which is located at 4931 Chatham Drive here in King George County.
> Shawn Hunter was interviewed about the details of what he saw and provided what was found to be methamphetamine to Detective Patterson as a show of proof of his concerns.
> A search warrant was obtained for 4391 Chatham Drive. NCIS, King George Sheriff's Office, Virginia State Police, a Lab Unit, King George Fire and Rescue all responded to that location for the search warrant due to the danger of a methamphetamine lab blowing up intoxicants, et cetera.
> Inside of the defendant's home, Special Agent J.B. Snyder who is present here in the Courtroom found all of the makings of a homemade cook operation.
> He would testify as an expert that the person possessing those materials, chemicals, Sudafed, batteries, battery cutters, muriatic acid,

---

[11] Hunter also read and signed an Acknowledgement of Rights form in open court affirming once again that he understood the rights he was waiving by entering into the Plea Agreement. (Cir. Ct. Record 99–100.)

ammonia bottles, coffee filters, et cetera, was in fact manufacturing methamphetamine.

Inside the bedroom, paperwork with the name Markeith Hunter on it was found along with some of these items.

On October 19th, Mr. Hunter was arrested by the Spotsylvania County Sheriff's Office in Spotsylvania County and was transported to the Rappahannock Regional Jail.

Post-Miranda, he gave a statement that lasted an hour and eight minutes that the Commonwealth would characterize as a confession.

During that, he admitted to manufacturing and cooking methamphetamine. Gave details on how to cook methamphetamine. Admitted possession and gave a description of how he used each of the items found in the home during the cooking process and, in fact, even labeled his methamphetamine as the filet mignon of methamphetamine. All the events of cooking took place here in the county, Judge.

(ECF No. 20–4, at 15–17.) The Circuit Court subsequently accepted Hunter's guilty plea and found Hunter guilty of manufacturing methamphetamine. (*Id.* at 18.) Hunter indicated that he had no statements he wanted to make "before this agreed sentence was announced." (*Id.*) The Circuit Court then sentenced Hunter to the exact sentence the parties agreed upon in the Plea Agreement—thirty years with twenty-two years and six months suspended. (*Id.* at 19.)

## V. APPLICABLE CONSTRAINTS UPON HABEAS REVIEW

In order to obtain federal habeas relief, at a minimum, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty of 1996 ("AEDPA") further circumscribes this Court's authority to grant relief by way of a writ of habeas corpus. Specifically, "[s]tate court factual determinations are presumed to be correct and may be rebutted only by clear and convincing evidence." *Gray v. Branker*, 529 F.3d 220, 228 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)).

Additionally, under 28 U.S.C. § 2254(d), a federal court may not grant a writ of habeas corpus based on any claim that was adjudicated on the merits in state court unless the adjudicated claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court has emphasized that the question "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).

## VI.    INEFFECTIVE ASSISTANCE OF COUNSEL

### A.    Applicable Law

To demonstrate ineffective assistance of counsel, a convicted defendant must show, first, that counsel's representation was deficient and, second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of *Strickland*, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

In the context of a guilty plea, the Supreme Court modified the second prong of *Strickland* to require a showing that "there is a reasonable probability that, but for counsel's errors, [petitioner] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). An assertion by Hunter that he would not have pled guilty if he had received better assistance from counsel is not dispositive of the issue. *See United States v. Mora-Gomez*, 875 F. Supp. 1208, 1214 (E.D. Va. 1995). Rather, "[t]his is an objective inquiry and [highly] dependent on the likely outcome of a trial had the defendant not pleaded guilty." *Meyer v. Branker*, 506 F.3d 358, 369 (4th Cir. 2007) (internal citation omitted) (citing *Hill*, 474 U.S. at 59–60). The Court looks to all the facts and circumstances surrounding a petitioner's plea, including the likelihood of conviction and any potential sentencing benefit to pleading guilty. *See id.* at 369–70. In conducting the foregoing inquiry, the representations of the defendant, his lawyer, and the prosecutor during the plea proceedings, "as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977). Thus, "[a]bsent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy." *Fields v. Att'y Gen. of Md.*, 956 F.2d 1290, 1299 (4th Cir. 1992) (citations omitted).

15

As discussed below, Hunter's remaining Claim Three is belied by the record and is entirely lacking in merit.

## B.    Analysis of Claim Three

Underlying Hunter's claims of ineffective assistance of counsel is the faulty premise that the search of the residence was illegal because the owner of the home, Wanda Hunter, did not give her consent to have police search the home.[12] In Claim Three (a)(1) and (b)(1), Hunter contends that his attorneys Robert May and Timothy Barbrow rendered ineffective assistance of counsel when they failed "to file[] for a motion of discovery." (ECF No. 1, at 8.) Hunter argues that counsel would not "produce[] any police/sheriff report for [him] to view to prepare for trial" and that if they had filed a discovery motion, the motion would have produced "evidence/fact that . . . Det. Patterson . . . [was] in the home without the homeowner's knowledge, consent or a warrant." (ECF No. 2, at 19.) In rejecting Claim Three (a)(1), the Supreme Court of Virginia explained as follows:[13]

> In a portion of [this claim] and a portion of the supplement to the petition, petitioner contends he was denied the effective assistance of counsel when his first court-appointed attorney, Robert May, failed to obtain police reports, including reports from an officer's visit to petitioner's home two days before a warrant to search the premises was executed and from the day the warrant was executed, failed to file a motion for discovery, and failed to

---

[12] Hunter also repeatedly argues that the police illegally helped his brother evict Wanda Hunter's tenants on October 9, 2016, two days before the police searched the house with a warrant. However, the circumstances surrounding the eviction have no bearing on Hunter's criminal drug conviction.

[13] The Supreme Court of Virginia very generously construed Hunter's claims as set forth in *supra* Part I. To the extent that Hunter raises additional claims buried in his submissions to this Court, the Court has thoroughly reviewed the record and finds no error in the Supreme Court of Virginia's rejection of Hunter's claims.

obtain documents establishing the chain of custody of the controlled substances seized by the police.

The Court holds this claim satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The record, including the circuit court manuscript, demonstrates the public defender was appointed to represent petitioner by the general district court on October 21, 2016. May, a public defender, was assigned to petitioner's case and represented him at the preliminary hearing on January 25, 2017. The general district court heard evidence and certified the case to the grand jury, which met on April 13, 2017, and indicted petitioner for manufacturing a Schedule I/II controlled substance having been before convicted of such an offense. By agreement of the parties, the case was set for trial by jury on June 8, 2017. May timely moved to suppress the evidence seized from the residence petitioner shared with his mother, Wanda Hunter ("Wanda"), who was also the homeowner. The evidence seized pursuant to a search warrant issued by a magistrate to Detective Patterson, the lead detective on the case, upon information provided to Patterson, by petitioner's brother, Sean Hunter ("Hunter"), who had been inside the residence and observed items used in the manufacturing of methamphetamine. The Commonwealth opposed the motion, contending the information Hunter supplied to Detective Patterson provided sufficient probable cause for a magistrate to issue a warrant and Hunter's presence at the sheriff's office when he reported his observations made him a known informant with first-hand knowledge of the facts he reported. Moreover, Hunter produced a bag containing a tan powder he recovered from the residence, and Detective Patterson field-tested the powder which tested positive for methamphetamine. The record, including the record of calls for service from the King George County Sheriff's Office ("service call record") and the transcript of the guilty plea hearing, further demonstrates Detective Patterson came to the residence at Hunter's request, assisted Hunter in serving an eviction notice of Sean and Marisa Lewis, who petitioner allowed to live there, and observed a red biohazard bag in the garage. Wanda, told Patterson "the residence could be searched." A search warrant was obtained and executed two days later. Thereafter, on June 12, 2017, upon petitioner's motion for new counsel, May was allowed to withdraw and Timothy Barbrow was appointed to represent petitioner.

Petitioner was not entitled to police reports unless they contained potentially exculpatory information, which he does not allege. *See* Rule 3A:11(b)(2). Further, petitioner fails to proffer the information a motion for discovery would have yielded or proffer how the chain of custody was not established. Moreover, petitioner does not allege he would have pled not guilty and gone to trial but for May's handling of his case through the preliminary hearing and in the trial court. Thus, petitioner has failed to

17

demonstrate that counsel's performance was deficient or that there is a reasonability that, but for counsel's errors, he would have pleaded not guilty, would have proceeded to trial, and the outcome of the proceedings would have been different. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

(ECF No. 20-2, at 1-2.) The Court discerns no unreasonable application of the law and no unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1)-(2). With respect to Hunter's claim that counsel failed to give him certain discovery materials, given that the resolution of this claim of ineffective assistance of counsel is highly dependent on Virginia law, Hunter fails to demonstrate any prejudice. *Richardson v. Branker*, 668 F.3d 128, 141 (4th Cir. 2012) ("When a claim of ineffective assistance of counsel raised in a habeas corpus petition involves an issue unique to state law, ... a federal court should be especially deferential to a state post-conviction court's interpretation of its own state's law."). Moreover, to the extent that Hunter believes a motion for discovery would have revealed that Wanda Hunter did not give consent to search the residence, counsel wisely perceived that her consent was irrelevant because the search was also based on a warrant supported by probable cause.[14]  *See Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) (explaining that it is "well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent" (citations omitted)).

---

[14] Hunter attaches an affidavit to his memorandum, from his mother, Wanda Hunter. (ECF No. 2-1, at 1.) Hunter did not submit this affidavit to the Supreme Court of Virginia and it is doubtful that this Court can consider this affidavit here. Even if this Court were permitted to consider this affidavit, it fails to alter this Court's conclusion that Hunter's claim lacks merit. Wanda Hunter states that she did not give her son Sean permission to call the police or to authorize a search of the residence. (*Id.*) Her consent was not needed as a search warrant issued upon a finding of probable cause.

Nevertheless, counsel filed a motion to suppress the evidence found in the residence, but as discussed below, Hunter fired counsel before it was argued. Hunter fails to demonstrate any deficiency of counsel or resulting prejudice. Accordingly, Claim Three (a)(1) will be dismissed

With respect to counsel Barbrow, the Supreme Court of Virginia found that Hunter's claim lacks merit because he "failed to offer a valid reason why he should not be bound by his representation at trial that his counsel's performance was adequate and that his guilty plea was voluntary and there is no evidence identified by petitioner that would support the contrary conclusion that the plea was involuntary." (ECF No. 20–2, at 5–6 (citation omitted)). The Court discerns no unreasonable determination of law or fact with respect to that conclusion. Accordingly, Claim Three (b)(1) lacks merit and will be dismissed.

In Claim Three (a)(2), Hunter contends that May rendered ineffective assistance of counsel when he failed to "interview or subpoena Wanda Hunter a key pivotal witness for my defense." (ECF No. 1, at 8.) Hunter again insists that the officers searched the residence without his mother Wanda Hunter's consent, and without a warrant. (ECF No. 2, at 19.) In rejecting this claim, the Supreme Court of Virginia explained as follows:

> In another portion of the supplement to the petition, petitioner contends he was denied the effective assistance of counsel when May "repeatedly ignored" his requests to subpoena Wanda to testify at the preliminary hearing.
> The Court holds this claim satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in *Strickland*. Petitioner fails to proffer the testimony he contends Wanda would have given at the preliminary hearing or demonstrate how her testimony would have benefitted petitioner. Thus, petitioner has failed to demonstrate that counsel's

performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, he would have pleaded not guilty, would have proceeded to trial, and the outcome of the proceedings would have been different. *Hill*, 474 U.S. at 59.

(ECF No. 20–2, at 4.) Again, the Court discerns no unreasonable application of the law and no unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1)–(2).

Although Hunter proffers that Wanda Hunter would testify that she did not give consent to have the house searched, as discussed above, her consent to the search was irrelevant, because the search was based on a valid search warrant. Thus, Hunter fails to demonstrate that counsel was deficient for failing to interview Wanda Hunter, or subpoena her for the preliminary hearing, or that the failure to do so resulted in any prejudice to Hunter. Claim Three (a)(2) lacks merit and will be dismissed.[15]

In Claim Three (a)(3), Hunter contends that May rendered ineffective assistance when he failed to bring "any defense strategy to the jail to discuss with me to help me with my case" (ECF No. 2, at 20), and failed to have the suppression motion heard before the trial date (*id.* at 21). In rejecting these claims the Supreme Court of Virginia explained as follows:

> The Court holds this claim fails to satisfy the "prejudice" prong of the two-part test enunciated in *Strickland*. Petitioner fails to identify any defense strategy counsel could have discussed with him at the jail but that he did not discuss with petitioner . . . . Moreover, the record demonstrates petitioner's motion to suppress was not rejected for May's failure to timely file it. Rather, May was replaced as counsel before the motion was heard, petitioner's new counsel set a date for the motion to be heard, and petitioner pled guilty on

---

[15] For the same reason, Barbrow cannot be faulted for failing to interview Wanda Hunter. Thus, Barbrow was neither deficient nor was Hunter prejudiced and Claim Three (b)(2) lacks merit. To the extent that *Martinez* could potentially excuse Hunter's default of Claim Three (b)(2), that claim too, lacks merit.

the date set for the hearing. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, he would have pleaded not guilty, would have proceeded to trial, and the outcome of the proceedings would have been different. *Hill*, 474 U.S. at 59.

(ECF No. 20–2, at 5.) The Court discerns no unreasonable application of the law and no unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1)–(2). May clearly had devised a defense strategy because he drafted and shared a motion to suppress with Hunter. Hunter fails to identify any alternative defense strategy that May should have pursued that would have had a reasonable probability of success. Additionally, May cannot be faulted for failing to argue the motion to suppress because he was no longer Hunter's attorney on the date he set to argue the motion. Hunter demonstrates neither deficiency of counsel nor resulting prejudice, and Claim Three (a)(3) will be dismissed.

## VII.   MOTION TO AMEND

The day before Respondent filed an Answer and Motion to Dismiss, Hunter filed an Amended § 2254 Petition wherein he attempts to add a different fourth claim for relief that the Court refers to here as Proposed Claim Five. (ECF No. 16–1.) Hunter argues:

Proposed Claim Five:   "Commonwealth['s] Attorney Charlie Clark has violated my 14[th] Amendment. The right to due process. In Exhibit-D, Charlie Clark (Clark) confirms that law enforcement was inside my home on 10–9–16, without a search warrant. Says "they were there for a complaint from the home owner. That was a lie, please see 'Exhibit-A.' That would mean that Clark has knowledge that Det. Patterson, the narcotics task force member was there performing an illegal eviction. Please see Exhibits-A and C." (*Id.* at 10.)

Respondent argues that the Motion to Amend should be denied as untimely and, therefore, futile.

### A.    Rule 15

The Federal Rules of Civil Procedure govern habeas proceedings "to the extent that they are not inconsistent with . . . the[] [R]ules [Governing Habeas Corpus Cases Under Section 2254]." Rule 12, Governing Habeas Corpus Cases Under Section 2254. Rule 15(a) of the Federal Rules of Civil Procedure permits one amendment as a matter of course "within . . . 21 days after serving it" or "21 days after service of a responsive pleading," Fed. R. Civ. P. 15(a)(1), but "[i]n all other cases a party may amend its pleading only with . . . the court's leave." *Id.* at 15(a)(2). "[L]eave to amend shall be given freely, absent bad faith, undue prejudice to the opposing party, or futility of amendment." *United States v Pittman*, 209 F.3d 314, 317 (4th Cir. 2000) (citations omitted). The Court appropriately denies as futile leave to amend when the statute of limitations bars the new claim. *See Ingram v. Buckingham Corr. Ctr.*, No. 3:09CV831, 2011 WL 1792460, at *1 (E.D. Va. May 5, 2011). Hunter's Motion to Amend was filed more than 21 days after the § 2254 Petition was served, therefore he must obtain leave of the Court to amend his petition.[16]

---

[16] This is an instance where Federal Rule of Civil Procedure 15(a) is inconsistent with Rule 4 of the Rules Governing Habeas Corpus Cases. Pursuant to Rule 4, the Court first screened the § 2254 Petition, and then ordered Respondent to file a responsive pleading within 30 days. Hunter's Motion to Amend was neither filed within 21 days after serving, *see* Rule 15(a)(1)(A), nor within 21 days after service of the responsive pleading, *see* 15(a)(1)(B), and it appears that neither squarely apply. Thus, this is an instance where Rule 15(a)(2) appears to control, and Hunter must seek leave of court to amend.

### B.   Statute of Limitations

Respondent contends that the federal statute of limitations bars Hunter's Proposed

Claim Five.  Section 101 of AEDPA amended 28 U.S.C. § 2244 to establish a one-year

period of limitation for the filing of a petition for a writ of habeas corpus by a person in

custody pursuant to the judgment of a state court.  Specifically, 28 U.S.C. § 2244(d) now

reads:

1.  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of—

(A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

2.  The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).  As explained below, § 2244(d)(1)(A) controls the commencement of

the limitations in this matter.

### B.    Commencement and Running of the Statute of Limitations

Respondent's statute of limitations calculation is incorrect in several regards.

Nevertheless, the amendment is untimely.  The Circuit Court entered judgment against

Hunter on October 2, 2017.  (ECF No. 20–1, at 1–2; *see also* Cir. Ct. Record Table of

Contents.)  Hunter's conviction became final on Wednesday, November 1, 2017, when

the time to note an appeal expired.  *See* Va. Code § 8.01–675.3; *Hill v. Braxton*, 277 F.3d

701, 704 (4th Cir. 2002) ("[T]he one-year limitation period begins running when direct

review of the state conviction is completed or when the time for seeking direct review has

expired . . . ." (citing 28 U.S.C. § 2244(d)(1)(A))).  Va. Sup.Ct. R. 5A:6(a) (providing no

appeal allowed unless notice of appeal filed within thirty days of final judgment).

### C.    Statutory Tolling

Respondent does not acknowledge that on November 17, 2017, Hunter filed a

letter motion requesting reconsideration of his bargained for sentence.  *See* Cir. Ct.

Record 112.  The Circuit Court denied that motion on December 4, 2017.  *See id.* at 118.

While it is doubtful that this motion for reconsideration filed in his criminal case

constitutes a collateral application for relief necessary to toll the limitation period, *see*

*Cataulin v. Commonwealth*, No. 3:15CV52, 2015 WL 9581417, at *2 (E.D Va. Dec. 28,

2015) (citations omitted), the Court need not reach that issue here.  Even with the benefit

of tolling during the pendency of the motion for reconsideration, the Motion to Amend

remains untimely.

Prior to the filing of the letter motion for reconsideration, the limitations period

ran for 15 days from November 2 through November 16, 2017.  The limitations period

began to run again on December 5, 2017, the day after the Circuit Court denied the

motion. Hunter filed his petition for writ of habeas corpus in the Supreme Court of

Virginia on February 7, 2018. At that point, an additional 64 days of the limitation

period had run. On December 7, 2018, the Supreme Court of Virginia dismissed the

petition. The limitations began running again the following day on December 8, 2018.[17]

At that point, Hunter had 286 days remaining, or until, Friday, September 20, 2019, to

bring Claim Five.[18] Hunter failed to file his Motion to Amend until November 13, 2019.

(ECF No. 16–1, at 14.)[19] Thus, the statute of limitations bars Proposed Claim Five unless

Hunter demonstrates entitlement to a belated commencement of the limitation period

under 28 U.S.C. § 2244(d)(1)(B)–(D), equitable tolling, or that Proposed Claim Five

relates back to the claims in his § 2254 Petition, *see Pittman*, 209 F.3d at 317.

Neither Hunter nor the record suggests any plausible basis for belated

commencement of the limitation period or equitable tolling. Moreover, as discussed

---

[17] Hunter filed a petition for rehearing; however, the Supreme Court of Virginia dismissed it as untimely. (ECF No. 20–3, at 1.) Therefore, it was not properly filed for the purposes of statutory tolling. *See Pace v. DiGuglielmo*, 544 U.S. 408, 410 (2005).

[18] Contrary to Respondent's suggestion, Hunter's previous § 2254 petition that was dismissed without prejudice, *see Hunter v. Dir. of the Dep's of Corr.*, No 3:19CV176–HEH (E.D. Va. filed Mar. 13, 2019), does not toll the limitations period. *See* 28 U.S.C. § 2244(d)(2) (tolling limitations period for "[t]he time during which a properly filed application for State post-conviction or other collateral review. . . is pending"); *Crawley v. Catoe*, 257 F.3d 395, 401 (4th Cir. 2001) (denying tolling pursuant to 28 U.S.C. § 2244(d)(2) because a federal habeas petition does not involve an application for state collateral review).

[19] This is the date Hunter indicates he placed his Motion to Amend in the prison mailing system and the Court deems this the filed date. *See Houston v. Lack*, 487 U.S. 266, 276 (1988).

below, Hunter fails to demonstrate that his Proposed Claim Five relates back to the claims in his § 2254 Petition.

### D.    Relation Back

Although Hunter filed his original § 2254 Petition within the limitation period, Proposed Claim Five fails to relate back to that submission for purposes of the statute of limitations. The Supreme Court has stated that, "[s]o long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order." *Mayle*, 545 U.S. at 664. Nevertheless, an amended claim "does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Id.* at 650. In this regard, it is not sufficient that the new claim simply has the same form as the original claims if the new claim "arises out of wholly different conduct." *Pittman*, 209 F.3d at 318. For example, "a petitioner does not satisfy the Rule 15 'relation back' standard merely by raising some type of ineffective assistance in the original petition, and then amending the petition to assert another ineffective assistance claim based upon an entirely distinct type of attorney misfeasance." *United States v. Ciampi*, 419 F.3d 20, 24 (1st Cir. 2005) (citing *Davenport v. United States*, 217 F.3d 1341, 1346 (11th Cir. 2000); *United States v. Duffus*, 174 F.3d 333, 337 (3d Cir. 1999)).

Hunter failed to raise any claims about prosecutorial misconduct in his § 2254 Petition or any claims of deficiency of counsel for failing to argue that the prosecutor engaged in misconduct. Thus, Proposed Claim Five, which raises such an allegation, fails to relate back to Hunter's original claims because the new claims "arise from

separate occurrences of 'both time and type.'" *Pittman*, 209 F.3d at 318 (quoting *United States v. Craycraft*, 167 F.3d 451, 457 (8th Cir. 1999)). Accordingly, Hunter's Motion to Amend (ECF No. 16) will be denied.[20]

## VIII. OUTSTANDING MOTION

Petitioner has filed another Motion for Discovery and Inspection. (ECF No. 31; *see* ECF No. 15.) A federal habeas petitioner must demonstrate good cause before he or she is allowed to conduct discovery. *Stephens v. Branker*, 570 F.3d 198, 213 (4th Cir. 2009). "A showing of good cause must include specific allegations suggesting that the petitioner will be able to demonstrate that he [or she] is entitled to habeas corpus relief," once the facts are fully developed. *Id.* (citing *Bracy v. Gramley*, 520 U.S. 899, 908–09 (1997)). As Hunter's claims lack merit, he fails to demonstrate that he would be entitled to habeas corpus relief with further development of the facts. Accordingly, Petitioner's Motion for Discovery and Inspection (ECF No. 31) will be denied.

---

[20] Hunter contends that amendment should be permitted because of "newly discovered evidence" that the prosecutor should have turned over under *Brady v. Maryland*. (ECF No. 30, at 2.) Hunter claims that the "newly-discovered evidence" is contained in certain police records and in the Supreme Court of Virginia's opinion and pertains to Detective Patterson visiting the house to evict the tenants on October 9, 2016. (ECF No. 17, at 15–16; ECF No. 30, at 2.) The Court fails to discern how the police records or a statement in the Supreme Court of Virginia's opinion could be "newly discovered evidence." The Court also fails to discern why Hunter could not have brought this claim in his original § 2254 Petition as he was well aware that Detective Patterson visited the residence with Sean Hunter that day and saw the biohazard bag inside. Moreover, even if the Court were to consider this claim timely, it would be defaulted because Hunter failed to present it to the Supreme Court of Virginia, and it lacks merit, because as discussed in conjunction with Claim Three (a)(1), Hunter had no right to these police reports because they contained no exculpatory information.

## VIII.  CONCLUSION

For the foregoing reasons, Respondent's Motion to Dismiss (ECF No. 18) will be granted.  Hunter's claims will be dismissed, and his § 2254 Petition will be denied.  The Motion to Amend (ECF No. 16) and Motion for Discovery and Inspection (ECF No. 31) will be denied.  The action will be dismissed.  A certificate of appealability will be denied.[21]

An appropriate Final Order shall accompany this Memorandum Opinion.

/s/

HENRY E. HUDSON
SENIOR UNITED STATES DISTRICT JUDGE

Date: May 11, 2020
Richmond, Virginia

---

[21] An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A).  A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). Hunter fails to meet this standard.